FILED

09/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0032

DA 20-0032

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 244

STATE OF MONTANA,

Plaintiff and Appellee,

v.

CARLOS VALENZUELA,

Defendant and Appellant.

APPEAL FROM:     District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DC-18-3842
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Kristina L. Neal, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

Jed C. Fitch, Beaverhead County Attorney, Dillon, Montana

Submitted on Briefs:  September 22, 2021

Decided:  September 28, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Carlos Valenzuela was convicted by a jury in the Fifth Judicial District Court, Beaverhead County, of sexual assault and incest involving his biological son, C.J.V. Valenzuela appeals, contending sexual assault is a lesser included offense of incest and that his convictions for both violate double jeopardy. Valenzuela presents the following issues for review:

> 1. *Whether Valenzuela's convictions for sexual assault and incest violate the double jeopardy clause of the United States Constitution, the Montana Constitution, and § 46-11-410, MCA.*
>
> 2. *Whether Valenzuela's counsel was ineffective for failing to object to Valenzuela's convictions based on a double jeopardy violation.*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In April 2011, C.J.V. reported to his kindergarten teacher that he was inappropriately touched by his father, Valenzuela. His teacher informed law enforcement about the incident and indicated C.J.V. had engaged in sexually inappropriate behavior towards other children. Law enforcement and the Montana Department of Public Health and Human Services, Child and Family Services Division, investigated the allegation and prohibited Valenzuela from returning home. C.J.V. then told his mother that the incident had not occurred and his mother relayed C.J.V.'s recantation through a letter that she provided to law enforcement. Thereafter, Valenzuela was allowed to return home and law enforcement closed the investigation.

2

¶4 In September 2012, Valenzuela was sentenced to prison for an unrelated offense of sexual intercourse without consent. He received a sentence of twenty years to the Department of Corrections with fifteen years suspended. While Valenzuela was serving his sentence, C.J.V. and his mother moved to Idaho and C.J.V.'s mother obtained a divorce from Valenzuela. Valenzuela was released from prison in August 2017 and relocated to California. In 2018, C.J.V.'s mother planned a trip to California to attend a funeral and visit Valenzuela. C.J.V. said he did not want to go to California and elected, instead, to stay with relatives. When C.J.V.'s mother returned, C.J.V. told her he did not want to visit his father because the abuse he had alleged in 2011 had actually occurred. His mother reported the disclosure to law enforcement in Idaho and the investigation—which was transferred back to the Beaverhead County Police Department in Montana—was reopened.

¶5 In 2018, the State charged Valenzuela with sexual assault and incest for the incident which C.J.V. had initially reported back in 2011. A jury trial was held on July 11 and 12, 2019. At trial, C.J.V., then fourteen years old, testified that Valenzuela touched his penis, over his underwear, on one occasion for several minutes. C.J.V. also indicated that Valenzuela told him that he would hurt him if he told anyone. C.J.V. confirmed his recantation of the incident was due to his fear of being hurt by Valenzuela. C.J.V. also testified that Valenzuela would watch pornography and masturbate in front of him. The jury found Valenzuela guilty of both sexual assault and incest. The District Court imposed two concurrent sentences of 100 years to the Montana State Prison, with credit for 438 days served and a forty-year parole restriction.

3

¶6     On appeal, Valenzuela contends that sexual assault is an included offense of incest and his statutory and constitutional protections against double jeopardy were therefore violated when he was convicted and sentenced for both offenses. Valenzuela asserts this Court should exercise plain error review because his convictions for both sexual assault and incest, which arose out of the same occurrence, produced a manifest miscarriage of justice. Finally, Valenzuela also claims he was denied effective assistance of counsel when his counsel failed to raise these alleged double jeopardy violations.

## STANDARDS OF REVIEW

¶7     Determinations regarding Montana's statutory double jeopardy protections under § 46-11-410, MCA, present questions of law that this Court reviews for correctness. *State v. Williams*, 2010 MT 58, ¶ 13, 355 Mont. 354, 228 P.3d 1127 (citing *State v. Becker*, 2005 MT 75, ¶ 14, 326 Mont. 364, 110 P.3d 1). A legal question on the double jeopardy clause is reviewed de novo to determine whether the district court's interpretation of the law is correct. *State v. Guillaume*, 1999 MT 29, ¶ 7, 293 Mont. 224, 975 P.2d 312. Unpreserved issues alleging violations of a fundamental constitutional right are reviewable under the common law plain error doctrine. *State v. Barrows*, 2018 MT 204, ¶ 8, 392 Mont. 358, 424 P.3d 612. Plain error review is appropriate when failure to review the alleged error "may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *Barrows*, ¶ 8 (citations omitted).

4

¶8 A claim of ineffective assistance of counsel constitutes a mixed question of law and fact that this Court reviews de novo. *State v. Brandt*, 2020 MT 79, ¶ 10, 399 Mont. 415, 460 P.3d 427. Where ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal. *Brandt*, ¶ 10.

**DISCUSSION**

¶9 *1. Whether Valenzuela's convictions for sexual assault and incest violate the double jeopardy clause of the United States Constitution, the Montana Constitution, and § 46-11-410, MCA.*

¶10 Preliminarily, we must address whether it is appropriate to consider Valenzuela's double jeopardy claim. Although Valenzuela did not raise a double jeopardy objection at trial, this Court may nonetheless discretionarily review an issue not raised at trial which concerns a fundamental constitutional right. We have said:

> The purpose of the plain error doctrine is to correct an error not objected to at trial that affects the fairness, integrity, and public reputation of judicial proceedings. The plain error doctrine may be used in situations that implicate a defendant's fundamental constitutional rights, and where failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.

*Barrows*, ¶ 11 (quoting *State v. Lawrence*, 2016 MT 346, ¶ 9, 386 Mont. 86, 385 P.3d 968). We must first determine whether Valenzuela's fundamental constitutional rights have been implicated.

¶11 The Fifth Amendment to the United States Constitution and Article II, Section 25, of the Montana Constitution protect citizens from being placed twice in jeopardy for the same offense. U.S. Const. amend. V ("[n]or shall any person be subject for the same offence to be twice put in jeopardy . . . ."); Mont. Const. art. II, § 25 ("No person shall be

5

again put in jeopardy for the same offense previously tried in any jurisdiction."). The prohibition against double jeopardy "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 223 (1957).

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green*, 355 at 187-88, 78 S. Ct. at 223.

¶12    Valenzuela asserts his convictions for sexual assault and incest, which arose out of the same offense and the same occurrence, violate his constitutional right against being placed twice in jeopardy, thus necessitating plain error review. Assessing the validity of the alleged error, i.e., conducting the review, must be distinguished from the threshold determination that plain error review is appropriate. Here, Valenzuela has asserted a claim that, if valid, would implicate a significant constitutional right. Nothing could be more egregious than being convicted and punished for a crime not allowed by law. Standing convicted and sentenced for two offenses, if one offense were indeed a lesser included offense of the other, would constitute a manifest miscarriage of justice. Accordingly, we conclude Valenzuela's claim implicates a fundamental constitutional right and that plain error review is appropriate to determine if his constitutional right against double jeopardy has, in fact, been violated.

6

¶13 Valenzuela asserts that sexual assault is an included offense of incest and his convictions for both offenses, arising out of the same incident, violate his constitutional and statutory double jeopardy rights. Valenzuela's double jeopardy rights are protected by the Fifth Amendment of the United States Constitution, enforceable in Montana through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794-95, 89 S. Ct. 2056, 2062-63 (1969), as well as under Article II, Section 25 of the Montana Constitution, which bars multiple convictions for the same offense. Valenzuela also separately asserts his statutory right against double jeopardy as provided by § 46-11-410, MCA, Montana's "multiple charges" statute.

¶14 In determining whether a defendant can be charged and convicted of violating two statutes for the same act or transaction under Article II, Section 25, of the Montana Constitution, this Court has adopted the same general test prescribed by the Fifth Amendment of the United States Constitution. *See State v. Minez*, 2003 MT 344, ¶ 33, 318 Mont. 478, 82 P.3d 1; *State v. Savaria*, 284 Mont. 216, 222, 945 P.2d 24, 28 (1997) ("The constitutional prohibition against double jeopardy is found in the Fifth Amendment . . . Article II, Section 25, of the Montana Constitution, provides the same protection."). Specifically, this Court employs the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932). The *Blockburger* test states:

> Each of the offenses created [must] require proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

7

*Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. The *Blockburger* test is a "test of statutory construction . . . to determine whether [the legislature] intended the same conduct to be punishable under two criminal provisions." *Ball v. United States*, 470 U.S. 856, 861, 105 S. Ct. 1668, 1671 (1985); *State v. Crowder*, 248 Mont. 169, 178, 810 P.2d 299, 305 (1991). Since *Blockburger*, the United States Supreme Court "has recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S. Ct. 2260, 2265 (1980). "The dispositive question is whether the legislature intended to provide for multiple punishments. The *Blockburger* test is merely one rule of statutory construction to aid in the determination of legislative intent . . . The ultimate question remains one of legislative intent." *State v. Close*, 191 Mont. 229, 246, 623 P.2d 940, 949 (1981) (citing *Whalen v. United States*, 445 U.S. 684, 100 S. Ct. 1432 (1980)).

¶15    In Montana, the *Blockburger* test must also be applied "with reference to the statutes defining each offense and not with reference to the facts of the individual case." *State v. Ritchson*, 193 Mont. 112, 116, 603 P.2d 234, 237 (1981). In states that have employed the alternative "factual approach," the facts of the individual case—rather than the statutory elements of the crimes—determine whether multiple punishments are allowed; that is, in some jurisdictions, "the test is to eliminate the facts in the individual case which are needed to prove one offense and then determine if the remaining facts will prove the other offense." *Ritchson*, 193 Mont at 117, 603 P.2d at 237 (citing *State v. Mitchell*, 478 P.2d 517 (Ariz. 1970)). "Montana has never used the factual

8

approach, however, and such an approach is inconsistent with the statutory and case law of this state." *Ritchson*, 193 Mont. at 117, 603 P.2d at 237.

¶16    In addition to these constitutional protections, Montana affords additional statutory protections against double jeopardy through §§ 46-11-410 and -503, MCA. Section 46-11-410, MCA, addresses double jeopardy when the same transaction may establish multiple charges or the commission of more than one offense. Section 46-11-503, MCA, addresses double jeopardy involving former prosecutions. Here, the relevant statute is § 46-11-410, MCA, and Valenzuela asserts his multiple convictions for incest and sexual assault violate § 46-11-410(2)(a), MCA, because sexual assault is an "included offense"—as defined in § 46-1-202(9), MCA—of incest.

¶17    Section 46-11-410, MCA, provides that when a person's conduct in one transaction constitutes multiple offenses, the State may prosecute that person for each offense, allowing a prosecution for multiple offenses—subject to five enumerated limitations. *See* § 46-11-410(1)-(2), MCA. The two relevant limitations in this case are § 46-11-410(2)(a) and § 46-11-410(2)(d), which, respectively, protect a person from being prosecuted for more than one offense if "one offense is included in the other" or "the offenses differ only in that one is defined to prohibit a specific instance of the conduct." Section 46-11-410(2)(a), (d), MCA. Valenzuela raises an objection under only § 46-11-410(2)(a), presumably because this Court's precedent does not analyze § 46-11-410(2)(a) and § 46-11-410(2)(d) separately. We have explained that "evaluating double jeopardy defenses brought under these two provisions has employed a single standard in which we consider the elements of each charge to determine whether

9

each charge requires a proof of a fact that the other does not (if so, prosecution for each charge is not statutorily prohibited)." *State v. Weatherell*, 2010 MT 37, ¶ 12, 355 Mont. 230, 225 P.3d 1256; *Brandt*, ¶ 18. *See also State v. Matt*, 2005 MT 9, ¶ 11-15, 325 Mont. 340, 106 P.3d 530; *State v. McQuiston*, 277 Mont. 397, 406-07, 922 P.2d 519, 525 (1996), *rev'd in part on other grounds*; *State v. Sor-Lokken*, 247 Mont. 343, 351-52, 805 P.2d 1367, 1373 (1991); *State v. Hall*, 224 Mont. 187, 190-92, 728 P.2d 1339, 1341-42 (1986), *rev'd on other grounds*.[1] Our precedent thus indicates that the constitutional test and the § 46-11-410(2)(a) and (d), MCA, test for multiple charges are identical.

¶18   Under § 46-11-410(2)(a) and (d), MCA's test, this Court must determine "whether one of the two charges is an 'included offense,' which is statutorily defined as an offense that 'is established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *Weatherell*, ¶ 12 (quoting § 46-1-202(9)(a), MCA, which defines the term "included offense"). "Where each offense requires proof of a 'fact' which the other does not, there cannot be a specific instance of conduct which is included in the other offense." *State v. Hooper*, 2016 MT 237, ¶ 11, 385 Mont. 14, 386 P.3d 548 (citing *Weatherell*, ¶ 12). Moreover, according to this Court, the term "facts," as used in § 46-1-202(9)(a), MCA, "refers to the statutory elements of the offense and not the

---

[1] Contrary to the dissent's analysis, in *Weatherell* we correctly recognized that our decisions in *Hall* and *Sor-Lokken* were decided under this singular test and that there was no distinction between the test to be applied under § 46-11-410(2)(a), MCA, and § 46-11-410(2)(d), MCA.

individual facts of each case." *State v. Smith*, 276 Mont. 434, 443, 916 P.2d 773, 778 (1996).[2]

¶19   Here, both § 46-11-410(2)(a) and (d), MCA, and *Blockburger* require this Court to determine whether the statutory elements for sexual assault are the same or less than incest or—alternatively—whether each offense requires proof of an additional element.  We now turn to the *Blockburger* test to address Valenzuela's constitutional and statutory double jeopardy claims.

¶20   Sexual assault, as provided for in § 45-5-502(1), MCA, requires proof that a person:

   (1) knowingly

   (2) subjects another person to

   (3) any sexual contact

   (4) without consent.

The statutory element of "without consent" may be proven by facts establishing the victim was less than fourteen years old and the offender was three or more years older than the victim.  Section 45-5-502(5)(a)(ii), MCA ("[C]onsent is ineffective under this section if the victim is . . . less than 14 years old and the offender is 3 or more years older than the victim.").  The statutory element of "without consent" is nonetheless still required when the victim is less than fourteen and the offender is three or more years older; the legislature has merely created an alternative means for proving the element.

---

[2] In essence, the dissent's § 46-11-410(2), MCA, analysis, by identifying and comparing "sub-variants" of sexual assault and incest, comes dangerously close to the fact-based approach that this Court has previously rejected.

11

¶21 Incest, as provided for in § 45-5-507(1), MCA, requires proof that a person:

(1) knowingly

(2) marries, cohabits with, has sexual intercourse with, or has sexual contact with

(3) an ancestor, a descendant, a brother or sister of the whole or half blood, or any stepson or stepdaughter.

¶22 Comparing the elements of each offense as *Blockburger* requires, it is clear both offenses require sexual contact and the mental state of "knowingly." However, each offense requires an element that the other does not: sexual assault requires that the conduct be committed without consent; incest requires the sexual contact be with a descendant. Incest prohibits a person from having sexual contact with a descendent regardless of the age of the descendent or whether the descendent consented. Sexual assault prohibits a person from having sexual contact with a person who does not consent. Lack of consent remains an element of the offense regardless of the victim's age, and the state must present evidence at trial to avail itself of the statutory provision regarding consent when consent is ineffectual. The fact that the legislature intended to protect children from sexual contact by older people by making a young victim's consent ineffectual does not remove the element of "without consent" from the offense of sexual assault. Rather, it reflects the Montana Legislature's intent that the element of "without consent" may be established by proof of the ages of the victim and defendant.

¶23 Specifically, the question confronting this Court is whether the Montana Legislature intended to authorize cumulative punishments for sexual assault and incest. There are several bases for concluding that the legislature did not intend to preclude punishment for

12

both sexual assault and incest. First, application of the *Blockburger* test does not result in the conclusion that sexual assault is a lesser included offense of incest. The offenses have different statutory elements. *Blockburger's* analysis must stand on the working of the statutes alone.

¶24 Second, the public policy and purpose behind these laws are both important tools for determining legislative intent. "Incest is a qualitatively unique sexual offense because the act itself is unlawful *whether or not it is consensual or a minor is involved* and especially because it requires two participants." *State v. Kline*, 2016 MT 177, ¶ 21, 384 Mont. 157, 376 P.3d 132 (emphasis added). "Public policy otherwise spurns the notion that an adult may use a parental relationship to take sexual advantage of his minor child." *Kline*, ¶ 37 (Baker, J., concurring). The public policy and purpose behind sexual assault laws is to protect individuals from nonconsensual and unwanted sexual contact and, in particular, protect those who are young and vulnerable in relation to older individuals. If a defendant wants to commit incest, he must pay a price. If a defendant wants to commit a sexual assault against someone without their consent, he must pay a higher price. The legislature manifested an intention to serve these two different interests in enacting the statutes. Given the strong societal interests underlying these distinct offenses, it strains credulity to hold that if a victim is older than fourteen, a defendant can be convicted of both incest and sexual assault; whereas, when the victim is younger, a defendant can only be convicted of one offense.

¶25 In *Hall*, this Court concluded the offense of sexual assault was included in the offense of incest by reasoning that the prosecution's proof of "sexual contact" was the same

13

for both sexual assault and incest, effectively eliminating the element of "without consent." *Hall*, 224 Mont. at 191, 728 P.2d at 1341, *rev'd on other grounds* by *Montana v. Hall (Hall II)*, 481 U.S. 400, 107 S. Ct. 1825 (1987) (reversing our decision in *Hall* that retrial of the defendant would violate double jeopardy, while leaving intact *Hall*'s conclusion regarding sexual assault and incest). However, *Hall*'s conclusion, for the reasons we have just stated, was incorrect and is inconsistent with our precedent. Rather than correctly applying the *Blockburger* element-based test, the Court in *Hall* applied the "factual approach" which this Court specifically rejected in *Ritchson* because it was inconsistent with our statutes and case law in Montana. *See Ritchson*, 193 Mont at 117, 603 P.2d at 237. The Court's faulty reasoning in *Hall* is manifested in its statement that "Hall's incestuous conduct constituted the same offense in law and *in fact* as sexual assault. Therefore, the double jeopardy clause prohibits Hall's retrial." *Hall*, 224 Mont. at 192, 728 P.2d at 1342 (emphasis added).

¶26 Following *Hall*, this Court decided *State v. Sor-Lokken*, 247 Mont. 343, 805 P.2d 1367 (1991). We held the defendant's convictions for both sexual assault and incest did not violate his double jeopardy protections, distinguishing *Hall* because the victim in *Sor-Lokken* was fifteen. *Sor-Lokken*, 247 Mont. at 352, 805 P.2d at 1373. *Sor-Lokken* demonstrates the absurd result that is reached by treating sexual assault as an included offense of incest based on the age of the victim. In *Hall*, the defendant escaped multiple punishments despite the fact that his victim was younger than the victim in *Sor-Lokken*; in *Sor-Lokken*, the defendant was punished for both sexual assault and incest because the victim was one year older.

14

¶27 Valenzuela's convictions for sexual assault and incest committed against his son, who was less than fourteen years old, do not violate double jeopardy. The elements, under the *Blockburger* test, for the offenses of incest and sexual assault are different. Sexual assault requires the element of "without consent" regardless of the victim's age. Our reasoning in *Hall* is inconsistent with the statutory element approach of *Blockburger* and our precedent. We overrule *Hall*'s conclusion that sexual assault is an included offense of incest and clarify that our decision in *Sor-Lokken* distinguishing *Hall* should not have been based on the victim's age. The element of "without consent" applies in all sexual assaults, regardless of the age of the victim. Sexual assault is not a lesser included offense of incest.

¶28 *2. Whether Valenzuela's counsel was ineffective for failing to object to Valenzuela's convictions based on a double jeopardy violation.*

¶29 This Court reviews claims of ineffective assistance of counsel through the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). A defendant asserting ineffective assistance of counsel has a burden to demonstrate by a preponderance of the evidence that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Baca v. State*, 2008 MT 371, ¶ 16, 346 Mont. 474, 197 P.3d 948. A trial counsel's performance is deficient if it falls "below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *State v. Brown*, 2011 MT 94, ¶ 12, 360 Mont. 278, 253 P.3d 859. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered

15

sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. To establish that the defendant was prejudiced by counsel's deficient performance, a defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Brown*, ¶ 17.

¶30    Here, we have concluded that sexual assault is not a lesser included offense of incest. This was the basis upon which Valenzuela asserts he was denied effective assistance of counsel. Valenzuela has, accordingly, failed to demonstrate counsel's representation was deficient or that there was a reasonable probability that the outcome would have been different if his counsel had raised a double jeopardy claim.

## CONCLUSION

¶31    We exercise plain error review to conclude that Valenzuela's convictions for both sexual assault and incest are not barred by double jeopardy because the offenses contain different elements and are designed to protect different societal interests.

¶32    Valenzuela's convictions for incest and sexual assault are affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

16

Justice Dirk Sandefur, dissenting.

¶33 I concur that Valenzuela's assertions of error warrant plain error review and that his concurrent convictions on the separate offenses of sexual assault and incest based on the same factual transaction or conduct did not violate his state and federal constitutional rights against double jeopardy under the same or included statutory elements test recognized in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932), and *Brown v. Ohio*, 432 U.S. 161, 165-69, 165, 97 S. Ct. 2221, 2225-27 (1977), and as subsequently codified in Montana in §§ 46-11-410(2)(a), 46-1-202(9), and (23), MCA (barring multiple convictions based on the "same transaction" if "one offense is included in the other" and defining "included offense" as one "established by proof of the same or less than all the facts required to establish the commission of the [other]" – formerly §§ 46-11-501(1), (2)(a), and -502(1), MCA (1978)). I concur that Valenzuela's sexual assault and incest convictions did not constitute prohibited double jeopardy under the constitutional *Blockburger* test or § 46-11-410(2)(a) because, as defined by statute, each of the particular sub-variants of those offenses at issue required proof of a different factual element than the other. I nonetheless dissent, however, because the Court inexplicably overlooks the distinction between the relatively simple and straightforward same or included elements test under *Blockburger* and §§ 46-11-410(2)(a) and 46-1-202(9), MCA, and the more restrictive Montana statutory double jeopardy protection provided by § 46-11-410(2)(d), MCA (barring two convictions based on the underlying fact-based "same transaction" where "the offenses differ only in that one is defined to prohibit a specific instance of the conduct" generally prohibited by the other – formerly §§ 46-11-501(1) and -502(4), MCA).

17

Compounding matters, the Court's disregard of § 46-11-410(2)(d), MCA, then leads to an equally inexplicable mischaracterization and disregard of our prior statutory analysis and holding in *State v. Hall*, 224 Mont. 187, 728 P.2d 1339 (1986). Upon close scrutiny, *Hall*'s application of § 46-11-410(2)(d), MCA, to the particular sub-variants of sexual assault and incest there at issue was manifestly correct and entirely consistent with our subsequent application of § 46-11-410(2)(d), MCA, in *State v. Sor-Lokken*, 247 Mont. 343, 805 P.2d 1367 (1991), with the only difference being a different result based on the distinct sub-variant of sexual assault at issue there.

A.  Fifth Amendment Double Jeopardy Protection.

¶34    The Double Jeopardy clause of the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The Fifth Amendment double jeopardy protection applies to state criminal proceedings through the Fourteenth Amendment Due Process clause. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969).  In pertinent part, the Fifth Amendment double jeopardy protection prohibits "multiple punishments for the same offense" in the same prosecution. *Brown*, 432 U.S. at 165, 97 S. Ct. at 2225; *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 803, 109 S. Ct. 2201, 2206-07 (1989).  While the legislative branch is "free . . . to define crimes and fix punishments," the Fifth Amendment prohibits convictions effecting "more than one punishment for [what is essentially] the same offense." *Brown*, 432 U.S. at 165, 97 S. Ct. at 2225.  In the scenario where multiple convictions in the same prosecution are based on

18

the same underlying factual "act or transaction," the general test for determining whether the multiple convictions violate the Fifth Amendment double jeopardy prohibition is whether one offense is the same as or included in another. *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182 (same offense/elements test). *See also Brown*, 432 U.S. at 165-69, 97 S. Ct. at 2225-27 (holding that a "greater offense" and a "lesser included offense" are the "same offense" under the *Blockburger* test). *Accord Illinois v. Vitale*, 447 U.S. 410, 415-16, 100 S. Ct. 2260, 2264-65 (1980).[1]

B. Montana Constitutional Double Jeopardy Protection.

¶35 Apart from the United States Constitution, the Montana Constitution independently guarantees that "[n]o person shall be again put in jeopardy for the same offense previously tried in any jurisdiction." Mont. Const. art. II, § 25. Despite seemingly narrower language, we have construed Article II, Section 25, *inter alia*, to at least co-extensively protect the criminally accused from "multiple prosecutions" in the same prosecution "for offenses arising out of the same transaction." *State v. Savaria*, 284 Mont. 216, 222-25, 945 P.2d

---

[1] The Fifth Amendment also protects the criminally accused "against a second prosecution for the same offense after [a prior] acquittal . . . [or] conviction" on the same or an included offense. *Pearce*, 395 U.S. at 717, 89 S. Ct. at 2076. These additional aspects of the constitutional double jeopardy prohibition "protect[] the accused from attempts to relitigate the facts underlying a prior acquittal . . . and from attempts to secure additional punishment after a prior conviction and sentence." *Brown*, 432 U.S. at 165-66, 97 S. Ct. at 2225 (internal citations omitted). "Even if two offenses are sufficiently different" to not constitute essentially the same offense and thus "permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown*, 432 U.S. at 166 n.6, 97 S. Ct. at 2226 (citing *Ashe v. Swenson*, 397 U.S. 436, 442-47, 90 S. Ct. 1189, 1193-96 (1970)). In such cases, strict application of a same elements test "would . . . permit[] imposition of consecutive sentences had the charges been consolidated in a single proceeding." *Brown*, 432 U.S. at 166 n.6, 97 S. Ct. at 2226 (citing *Ebeling v. Morgan*, 237 U.S. 625, 35 S. Ct. 710 (1915)).

24, 28-30 (1997) (Article II, Section 25 "provides the same protection" as Fifth Amendment – holding that multiple convictions on separate counts of theft did not violate Article II, Section 25 regardless of alternative availability of all-encompassing theft by common scheme charge); *State v. Minez*, 2003 MT 344, ¶ 33, 318 Mont. 478, 82 P.3d 1.[2] Based on the similar Fifth Amendment protection, the *Blockburger* same elements test is the general test for determining whether multiple convictions in the same prosecution are based on the same transaction under Article II, Section 25, of the Montana Constitution. *See Minez*, ¶ 33; *Savaria*, 284 Mont. at 222, 945 P.2d at 28; *State v. Coleman*, 185 Mont. 299, 310-11, 605 P.2d 1000, 1008 (1979); *State v. Blinzler*, 183 Mont. 300, 309-10, 599 P.2d 349, 355 (1979); *State v. Davis*, 176 Mont. 196, 199-200, 577 P.2d 375, 377 (1978) (citing *Blockburger* and *State v. Marchindo*, 65 Mont. 431, 211 P. 1093 (1922)).

C. Additional Montana Statutory Double Jeopardy Protection.

¶36 Separate and apart from the double jeopardy protections provided by the United States and Montana constitutions, Montana's 1973 Criminal Code separately included, in a single statute, a comprehensive scheme of statutory double jeopardy protection which, in essence, codified certain existing federal and state constitutional double jeopardy protections and provided additional statutory protection above the constitutional floor. *See* § 95-1711 RCM (1947) (1973 Mont. Laws ch. 513, § 6). Section 95-1711 RCM (1947)

---

[2] *Compare State v. Guillaume*, 1999 MT 29, ¶¶ 8 and 16, 293 Mont. 224, 975 P.2d 312 (Article II, Section 25 protects against "multiple prosecutions for offenses arising out of the same transaction" and "multiple punishments . . . for the same offense" but "affords greater protection" than Fifth Amendment "against multiple punishments" in the same prosecution "for the same offense" – holding that consecutive sentences on felony assault (reasonable apprehension of serious bodily injury variant) and separate dangerous weapon enhancement violated Article II, Section 25).

(1973), defined the terms "same transaction" and "included offense" as referenced in the ensuing Revised Code subsections later redesignated as §§ 46-11-410, -503, and -504, MCA, as amended. *See* § 46-1-202(9) and (23), MCA ("same transaction" and "included offense" definitions – originally § 95-1711(1)(a)-(b), RCM (1947) (1973), subsequently redesignated as § 46-11-501(1)-(2), MCA (1978), and subsequently repealed and reenacted as § 46-1-202(9) and (23), MCA (1991 Mont. Laws ch. 800, §§ 2 and 264)); § 46-11-410, MCA (in re multiple convictions based on the same underlying factual transaction – originally § 95-1711(2), RCM (1947) (1973), subsequently redesignated as § 46-11-502, MCA (1978), and renumbered by Code Commissioner in 1991 as § 46-11-410, MCA); § 46-11-503, MCA (in re subsequent prosecution based on the same transaction at issue in a prior prosecution – originally § 95-1711(3), RCM (1947) (1973), and subsequently redesignated as § 46-11-503, MCA (1978)); § 46-11-504, MCA (in re subsequent prosecution based on the same transaction in a prior prosecution in another jurisdiction – originally § 95-1711(4), RCM (1947) (1973), and subsequently redesignated as § 46-11-504, MCA (1978)). *See also*, *e.g.*, *State v. Sword*, 229 Mont. 370, 375, 747 P.2d 206, 209 (1987) (noting that § 46-11-504, MCA (originally § 95-1711(4), RCM (1947) (1973)), provides "greater protection from double jeopardy than . . . [the constitutional] *Blockburger* [test]" and that mere application of the *Blockburger* same elements test would "strip the defendant of" granted "statutory protection"). *Accord State v. Tadewaldt*, 277 Mont. 261, 268, 922 P.2d 463, 467 (1996) ("[w]hile the *Blockburger* 'elements' test generally is appropriate in analyzing double jeopardy arguments relating to whether there are two offenses or only one . . . , the plain language of § 46-11-504(1), MCA, mandates a broader

21

conduct- and transaction-based analysis than *Blockburger* provides"); *State v. Couture*, 1998 MT 137, ¶¶ 9-12, 289 Mont. 215, 959 P.2d 948 (§ 46-11-504, MCA, "provides criminal defendants with greater protection against double jeopardy than the" *Blockburger* same elements test – citing *Sword* and *Tadewaldt*).[3]

D.  Threshold Constitutional and Statutory Double Jeopardy Criteria—Same Underlying Factual Conduct or Transaction.

¶37    As a threshold matter, the federal and state constitutional double jeopardy protection applies only to criminal offenses based on the same underlying factual transaction or conduct, *i.e.*, the same transaction. *See Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182.  As referenced in Montana's double jeopardy statutes, §§ 46-11-410, -503, and -504, MCA, the Legislature has further elaborated, in pertinent part, that the term "same transaction" includes "conduct consisting of a series of acts or omissions that are [either] motivated by: (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective[] or (b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person."  Section 46-1-202(23), MCA.  Here, as noted by the Court, Valenzuela's incest and sexual assault

---

[3] Section 95-1711, RCM (1947) (1973) derived from the Model Penal Code § 1.07 (Am. Law Inst. 1962).  *State v. Wolfe*, 250 Mont. 400, 409-10, 821 P.2d 339, 344 (1991) (holding that § 46-11-502(2), MCA (now § 46-11-410(2)(b), MCA), applies only to inchoate crimes).  The 1973 Criminal Code was largely based on the Illinois adaptation of the Model Penal Code enacted as the Illinois Criminal Code of 1961.  Annotator's Note to 1973 Mont. Laws ch. 513, § 1, Montana Criminal Code of 1973 Annotated (Montana Criminal Law Commission 1974).  Though it promulgated § 1.07 prior to the 1969 holding in *Benton*, 395 U.S. at 794, 89 S. Ct. at 2062 (applying Fifth Amendment double jeopardy protection to the States through the Fourteenth Amendment), the ALI intended § 1.07 to at least be "generally consistent with" then-existing Fifth Amendment jurisprudence.  Explanatory Note for Sections 1.07-1.11, Model Penal Code § 1.07 (Am. Law Inst. 1962).

convictions are both based on a single instance in 2011 when he "touched [the] penis" of his kindergarten-aged son "over his underwear . . . for several minutes." Opinion, ¶ 5. The State does not dispute, and the record clearly reflects, that the subject convictions were both based on the "same transaction" as referenced in the constitutional *Blockburger* test and § 46-11-410(1), MCA.

     E.    Included Offense Analysis—Constitutional *Blockburger* Test and Similar Statutory Double Jeopardy Protection Under § 46-11-410(2)(a), MCA.

¶38    Under the constitutional *Blockburger* same elements test, two offenses based on the same transaction are the "same offense" unless each includes a required statutory element of proof which the other does not. *State v. McQuiston*, 277 Mont. 397, 405, 922 P.2d 519, 524 (1996), *overruled in part on other grounds by State v. Herman*, 2008 MT 187, ¶ 12 n.1, 343 Mont. 494, 188 P.3d 978; *Brown*, 432 U.S. at 165-69, 97 S. Ct. at 2225-27; *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. Consequently, the *Blockburger* test exclusively focuses on the similarity of the statutory elements of the subject offenses as a matter of law, rather than the actual evidence presented in a particular case. *McQuiston*, 277 Mont. at 405, 922 P.2d at 524; *Coleman*, 185 Mont. at 311-12, 605 P.2d at 1008-09. If each offense includes an essential statutory element of proof which the other does not, "the *Blockburger* test is satisfied" regardless of any "substantial overlap in the proof" alleged or presented "to establish the crimes" in a particular case. *McQuiston*, 277 Mont. at 405, 922 P.2d at 524 (citing *Ianelli v. United States*, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 1294 (1975)); *Vitale*, 447 U.S. at 416, 100 S. Ct. at 2265.

23

¶39 In pertinent part, the Montana statutory double jeopardy protection similarly prohibits multiple convictions in the same prosecution based on the same transaction if "one offense is included in the other" and, as pertinent, similarly defines an "included offense" as one "established by proof of the same or less than all the facts required to establish the commission of the [other]." Sections 46-11-410(2)(a) and 46-1-202(9)(a), MCA (multiple convictions based on same transaction prohibited if one offense is "included in the other" and definition of "included offense"—formerly § 95-1711(1)(b)(i) and (2)(a), RCM (1947) (1973), and §§ 46-11-501(2)(a), and -502(1), MCA (1978)). As with the *Blockburger* test from which it derives, reference in § 46-1-202(9)(a), MCA ("included offense" definition), to "the facts required to establish the commission of the [other] offense" exclusively refers "to the statutory elements of the crime rather than to the individual facts of each case." *State v. Ritchson*, 193 Mont. 112, 115-16, 630 P.2d 234, 237 (1981) (citing *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182, and *Brown*, 432 U.S. at 166, 97 S. Ct. at 2226). *Accord State v. Wells*, 202 Mont. 337, 351, 658 P.2d 381, 388 (1983) (citing *Ritchson* and *Blockburger*); *Coleman*, 185 Mont. at 310-13, 605 P.2d at 1008-10 (1979) (citing *Blockburger* and § 95-1711(1)(b) and (2)(a), RCM (1947) (1973), now §§ 46-1-202(9) and 46-11-410(2)(a), MCA); *State v. Perry*, 180 Mont. 364, 367-68, 590 P.2d 1129, 1131 (1979) (applying §§ 46-11-501(2)(a) and -502, MCA, formerly § 95-1711(1)(b) and (2)(a), RCM (1947) (1973), and now §§ 46-1-202(9) and 46-11-410(2)(a)). At a minimum, §§ 46-11-410(1), (2)(a), 46-1-202(9), and (23), MCA (prohibition of multiple convictions based on same transaction if "one offense included in the other" and definitions of "included offense" and "same transaction"), codify the

24

constitutional *Blockburger* same elements test. *Wells*, 202 Mont. at 350-51, 658 P.2d at 388 (citing *Blockburger* and § 46-11-502, MCA (1981), now § 46-11-410 – internal Montana citations omitted); *State v. Close*, 191 Mont. 229, 247, 623 P.2d 940, 950 (1981) (citing *Blockburger* test and § 46-11-502, MCA (1981), now § 46-11-410); *Coleman*, 185 Mont. at 310-13, 605 P.2d at 1008-10 (citing *Blockburger* and § 95-1711(1)(b) and (2)(a), RCM (1947) (1973), now §§ 46-1-202(9) and 46-11-410(2)(a), MCA).

¶40    Here, as clearly stated in his November 2020 judgment of conviction and sentence, Valenzuela was convicted and sentenced on particular statutory variants of the offenses of sexual assault and incest—felony Sexual Assault in violation of § 45-5-502(3), MCA, and felony Incest in violation of § 45-5-507(5), MCA—based on requisite factual proof that he, "at approximately 28 years of age," knowingly had sexual contact with his 6-8 year-old biological son on a single occasion in or about a specified time period in 2011. Applying the constitutional *Blockburger* same elements test, as codified in §§ 46-11-410(2)(a) and 46-1-202(9), MCA, the essential elements of proof of the subject sub-variants of the offenses as defined by statute and at issue here are:

| Sexual Assault (F) – Consent N/A[4] | Incest (F) w/ Descendant/SC– Consent N/A |
|---|---|
| (1) knowing sexual contact | (1) knowing sexual contact |
| (2) with another person; and | (2) with a descendant/stepchild; and |

---

[4] *See* § 45-5-502(1), MCA (generally defining sexual assault as "knowingly subject[ing] another person to any sexual contact without consent"). *Compare* § 45-5-502(5)(a)(ii), MCA ("consent is ineffective under this section if the victim is . . . less than 14 years old and the offender is 3 or more years older"). *See also* § 45-5-507(2)(a), MCA ("[c]onsent is a defense to incest with or upon a stepson or stepdaughter, but consent is ineffective if the stepson or stepdaughter is less than 18 years of age and the stepparent is 4 or more years older").

<table>
<tr><td>(3) victim less than age 16 – offender 3 or more years older.</td><td>(3) victim age 12 or younger – offender age 18 or older.</td></tr>
</table>

*See* § 45-5-507(1), (2)-(3), and (5), MCA (incest against descendant/stepchild age 12 or younger and offender age 18 or older); § 45-5-502(1), (3), and (5)(a)(ii), MCA (sexual assault against a person less than age 16 and offender three or more years older); *State v. Resh*, 2019 MT 220, ¶ 11, 397 Mont. 254, 448 P.3d 1100 ("without consent" element of felony sexual assault "differs . . . when" victim is below age of consent); *State v. Ghostbear*, 2014 MT 192, ¶ 6, 376 Mont. 500, 338 P.3d 25 (definition of felony sexual assault requires no proof of lack of consent when victim is below age of consent because "there can be no consent as a matter of law"); *State v. Ogle*, 255 Mont. 246, 252, 841 P.2d 1133, 1136 (1992) ("'without consent' is not an element of sexual assault where victim is less than 14 years old" – internal citations omitted). Comparing the requisite legal elements of proof as defined and at issue here, incest required proof of a more particular type of victim (*i.e.*, a descendant) not required for proof of felony sexual assault (*i.e.*, merely "another person"). *See* § 45-5-502(1), MCA; *compare* § 45-5-507(1), MCA. Incest further required proof of a different age-differential between the victim and offender (victim age 12 or younger and offender age 18 or older) than felony sexual assault (victim less than age 16 and offender three or more years older). *See* § 45-5-502(3), MCA; *compare* § 45-5-507(5)(a), MCA. Each of the particular sub-variants of the offenses at issue thus had at least one statutory element of proof which the other did not. The charged sub-variants of the offenses were therefore neither the same or included offenses as referenced in *Blockburger* and *Brown,* nor one "included in the other" as referenced in §§ 46-11-410(2)(a) and 46-1-202(9), MCA.

26

I thus concur with the Court's ultimate conclusion, if not its underlying analysis, that Valenzuela's sexual assault and incest convictions neither constitute double jeopardy as prohibited by the United States and Montana constitutions, nor violate Montana's similar statutory double jeopardy prohibition under §§ 46-11-410(2)(a) and 46-1-202(9), MCA. However, contrary to the Court's prematurely truncated analysis, the Montana statutory double jeopardy analysis does not end there.

F. Montana Statutory Double Jeopardy Protection Under § 46-11-410(1) and (2)(d), MCA.

¶41 Beyond the minimum protection of the *Blockburger* "same elements" test, as codified in §§ 46-11-410(2)(a) and 46-1-202(9), MCA, Montana's greater statutory double jeopardy protection in pertinent part prohibits multiple convictions in the same prosecution that are based on the same underlying factual transaction if "the offenses differ only in that one is defined to prohibit a specific instance of the conduct" generally prohibited by the other. Section 46-11-410(1) and (2)(d), MCA. Like the constitutional *Blockburger* test and similar test under § 46-11-410(2)(a), MCA, the question of whether § 46-11-410(2)(d), MCA, prohibits multiple convictions based on the same transaction exclusively depends on comparison of the statutory definitions, *i.e.*, statutory elements, of the subject offenses as a matter of law, not on the actual evidence presented in a particular case. *See* § 46-11-410(2)(d), MCA (focusing on how the subject offenses are "defined"). We have thus reached different results in our prior applications of § 46-11-410(2)(d), MCA (formerly § 46-11-502(4), MCA (1978), and § 95-1711(2)(d), RCM (1947) (1973)), depending on

27

which sub-variants of multi-variant offenses were at issue. *See Hall*, 224 Mont. at 190-93, 728 P.2d at 1340-42; *compare Sor-Lokken*, 247 Mont. at 351-52, 805 P.2d at 1373.

¶42    In *Hall*, the defendant was convicted at trial of felony incest, as defined by § 45-5-507, MCA (1983) (knowing sexual contact with stepdaughter less than age 18),[5] based on the same single instance of sexual contact. *Hall*, 224 Mont. at 188-91, 728 P.2d at 1339-41. We reversed the conviction on appeal, however, as a constitutional *ex post facto* violation because the offense occurred in 1983 before the effective date of the 1983 amendment of the statutory definition of incest to include sexual contact with a stepchild. *Hall*, 224 Mont. at 188-89 and 192, 728 P.2d at 1339-40 and 1342 (holding newly-expanded definition of incest not retroactively applicable). We then considered whether § 46-11-502(4), MCA (1981) (now § 46-11-410(2)(d), MCA), would prohibit the State from re-prosecuting the defendant on remand for felony sexual assault as defined by § 45-5-502(1), (3), and (5), MCA (1981) (knowing sexual contact with victim less than age 14 and offender 3 or more years older).[6] *Hall*, 224 Mont. at 190-92, 728 P.2d at 1340-42.

---

[5] Upon its effective date in 1983, § 45-5-507(2), MCA (formerly § 45-5-613, MCA (1981), amended and renumbered as § 45-5-507, MCA (1983)), provided that "[c]onsent is a defense . . . to incest with or upon a step[child] . . . , but consent is ineffective if the victim is less than 18 years old." In 2007, the Legislature amended § 45-5-507, MCA, to include the enhanced felony penalty in current subsection (5)(a) for incest with a victim under age 12 by an offender age 18 or older. Section § 45-5-507(5)(a), MCA (2007 Mont. Laws ch. 483, § 6). In 2017, the Legislature further amended § 45-5-507, MCA, to provide that "[a] person . . . less than 18 . . . is not legally responsible or . . . accountable for" incest "and is considered a victim of . . . incest if the . . . [offender] is 4 or more years older than the victim," and accordingly clarified that consent is not a defense to incest if the victim is under age 18 and the offender is 4 or more years older. Section 45-5-507(2), MCA (2017 Mont Laws ch. 226, § 1).

[6] *See* § 45-5-502(1) and (3)-(4), MCA (1981) (defining felony sexual assault as knowingly subjecting a person less than age 16 to sexual contact without consent when offender three or more years older and providing that consent is ineffective if the victim is less than age 14 and offender

Regardless of intermixed references in our analysis to the constitutional double jeopardy prohibition, *see Hall*, 224 Mont. at 190, 728 P.2d at 1340-42, the dispositive issue was whether the subject variants of incest (knowing sexual contact with a stepdaughter less than age 18) and felony sexual assault (knowing sexual contact with a victim less than age 14 and offender three or more years older) "differ[ed] only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct" as referenced in § 46-11-502(4), MCA (now § 46-11-410(2)(d), MCA, as amended). *Hall*, 224 Mont. at 190-92, 728 P.2d at 1341-42. As a threshold matter, we noted that a "second prosecution . . . for sexual assault would be based upon the same sexual contact with the same victim on the same dates as alleged in the incest charge," as referenced in § 46-11-501(1), MCA ("same transaction" definition). *See Hall*, 224 Mont. at 191, 728 P.2d at 1341. Turning to the elements of the particular sub-variants of incest and sexual assault at issue under § 46-11-502(4), MCA, we concluded that because the victim was of an age at which consent was ineffective, the pertinent sub-variant of sexual assault "require[d] no separate proof" of "without consent," and thus held that re-prosecution of the defendant for sexual assault on remand would violate § 46-11-502(4), MCA, because, with lack of consent not at issue, "the statutory elements for both offenses

is three or more years older); *Resh*, ¶ 11 ("without consent" element of felony sexual assault "differs . . . when" victim is below age of consent); *Ghostbear*, ¶ 6 (definition of felony sexual assault requires no proof of lack of consent when victim is below age of consent because "there can be no consent as a matter of law"); *Ogle*, 255 Mont. at 252, 841 P.2d at 1136 ("'without consent' is not an element of sexual assault where victim is less than 14 years old" – citing *State v. Price*, 191 Mont. 1, 622 P.2d 160 (1980), *Sor-Lokken*, and *Hall*).

29

are essentially the same" with the "only difference" being the nature of the relationship between the accused and the victim. *Hall*, 224 Mont. at 190-92, 728 P.2d at 1340-42 (citing *Brown*, 432 U.S. at 166 n.6, 97 S. Ct. at 2226).[7]

¶43   In contrast, in *Sor-Lokken*, we again considered whether the Montana statutory double jeopardy protection provided by § 46-11-502(4), MCA (now § 46-11-410(2)(d), MCA), barred multiple convictions for incest and sexual assault, this time based on the same sexual contact with a 15-year-old stepdaughter, thus implicating a different sub-variant of sexual assault. *Sor-Lokken*, 247 Mont. at 351-52, 805 P.2d at 1373. Unlike

---

[7] While we did not indicate the perceived relationship or link between them, our summary analysis clearly combined the independent statutory prohibition of § 46-11-502(4), MCA, with the constitutional observation in *Brown*, 432 U.S. at 166 n.6, 97 S. Ct. at 2226 (citing *Ashe*, 397 U.S. at 442-47, 90 S. Ct. at 1193-96 – emphasis added), that "[t]he *Blockburger* test is *not the only standard* for determining whether successive prosecutions impermissibly involve the same offense" – "[e]ven if two offenses are sufficiently different" to not constitute essentially the same offense and thus "permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *See Hall*, 224 Mont. at 190-93, 728 P.2d at 1340-42. In such cases, the Supreme Court has observed that strict application of a same elements test "would . . . permit[] imposition of consecutive sentences had the charges been consolidated in a single proceeding." *Brown*, 432 U.S. at 166 n.6, 97 S. Ct. at 2226 (citing *Ebeling*). *See also State v. Bad Horse*, 185 Mont. 507, 513-14, 605 P.2d 1113, 1117 (1980) (noting but finding inapplicable under the circumstances at issue that the Supreme Court has recognized that "collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy" and "that the inquiry as to whether [Fifth Amendment] collateral estoppel applies 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings'" – internal federal citations omitted). Note, however, that the Fifth Amendment-incorporated concept of collateral estoppel by definition applies only to relitigation of the same factual issues in a subsequent or collateral proceeding which is never at issue in cases of multiple convictions based on the same transaction in the same prosecution. Thus, contrary to the indiscriminate cursory assertion of the Majority here, *Hall* is at least distinguishable, and at most erroneous, *only to the extent* that it conflated the Fifth Amendment collateral estoppel concept with the greater Montana statutory double jeopardy protection provided by § 46-11-502(4), MCA (now § 46-11-410(2)(d), MCA). In either event, the conflated reference to constitutional double jeopardy in *Hall* does not alter or undermine its central focus and decision point under the Montana statutory double jeopardy protection.

the sub-variant of sexual assault at issue in *Hall* (knowing sexual contact with a victim less than 14 years old and offender three or more years older), *Sor-Lokken* involved the distinct sub-variant of sexual assault requiring proof of knowing sexual contact *without consent* because the victim at issue was *not* below the age of consent. *Sor-Lokken*, 247 Mont. at 352, 805 P.2d at 1373. Distinguishing *Hall*, we noted that, unlike in *Hall*, the charged sub-variant of felony sexual assault at issue in *Sor-Lokken* required proof of "lack of consent," a statutory element not included in the charged sub-variant of incest (knowing sexual contact with a stepdaughter less than age 18). *Sor-Lokken*, 247 Mont. at 352, 805 P.2d at 1373. We thus found no violation of § 46-11-502(4), MCA, because, unlike in *Hall*, the difference in statutorily-required proof between the particular sub-variants of incest and sexual assault at issue was more than that one merely required proof of a specific type of conduct or circumstances generally prohibited by the other. *Sor-Lokken*, 247 Mont. at 352, 805 P.2d at 1373.[8]

¶44    Here, without analysis, the Majority cursorily derides and dismisses our prior holding in *Hall* as "incorrect" and "inconsistent with our precedent." Opinion, ¶ 25 (citing *State v. Matt*, 2005 MT 9, ¶¶ 11-15, 325 Mont. 340, 106 P.3d 530; *Hall*; *Sor-Lokken*; *McQuiston*; *State v. Weatherell*, 2010 MT 37, ¶ 12, 355 Mont. 230, 22 P.3d 1256; *State v.*

---

[8] In 1991, buried in a broader Act that generally revised the "laws relating to criminal procedure," the Legislature amended and renumbered § 46-11-504(4), MCA, without substantive change or effect into its current form prohibiting multiple prosecutions based on the same transaction if "the offenses differ only in that one is defined to prohibit a specific instance of the conduct." Section 46-11-502(2)(d), MCA (1991 Mont. Laws ch. 800, § 121 – SB 51 – renumbered by Code Commissioner as § 46-11-410(2)(d), MCA).

31

*Hooper*, 2016 MT 237, ¶ 11, 385 Mont. 14, 386 P.3d 548; and *State v. Brandt*, 2020 MT 79, ¶ 18, 399 Mont. 415, 460 P.3d 427). As a critical threshold matter, however, the Court's "single standard" proposition first ignores the clear and unambiguous language of § 46-11-410(2)(a) and (d), MCA, which disjunctively puts forth two distinctly different double jeopardy protections, using distinctly different language, that have distinctly different meaning. *See* §§ 46-1-202(9) and 46-11-410(2)(a), MCA (defining an "included offense" and barring multiple convictions based on same transaction "if one offense is included in the other"); *compare* § 46-11-410(2)(d), MCA (distinctly pertaining to "offenses [that] differ only in that one is defined to prohibit a specific instance of the conduct" generally prohibited by the other). Sections 46-1-202(9) and 46-11-410(2)(a), MCA, manifestly relate to each other and encompass the Montana-codified *Blockburger* same or included elements test. But based on its distinct language, § 46-11-410(2)(d), MCA, sets forth an entirely different statutory double jeopardy test. The Court's analysis simply ignores the fundamental tenet that we must construe statutes in context as a whole, with harmonious effect to all distinct statutory "provisions or particulars." Section 1-2-101, MCA; *State v. Mathis,* 2003 MT 112, ¶ 27, 315 Mont. 378, 68 P.3d 756. The Court provides no justification or explanation for its conflation or merger of these distinct statutory provisions into a "single standard." Without analysis, the Court merely provides cursory citation to a number of cases (*i.e.*, *Matt, Hall, Sor-Lokken, McQuiston, Weatherell, Hooper*, and *Brandt*)—none of which *support* its "single standard" proposition on close examination.

32

¶45   In *Matt*, the pertinent issue was whether the offense of assault with a weapon, as defined by § 45-5-213(1)(a), MCA (causation of "bodily injury" to "another" "with a weapon"—mental state omitted), was an "included offense" of assault on a peace officer, as defined by § 45-5-210(1)(a), MCA (causation of "bodily injury" to a "peace officer"—mental state omitted). *Matt*, ¶¶ 11-15. Because each of those offenses included an element of proof not included in the other (*i.e.*, use of a "weapon" for assault with a weapon and injury to a "peace officer" in assault on a peace officer), we held that assault with a weapon was not a lesser-included offense of assault on a peace officer. *Matt*, ¶ 15. Contrary to the Court's assertion here, we decided *Matt* solely on the basis of the *Blockburger* same or included elements test as codified in §§ 46-1-202(9) and 46-11-410(2)(a), MCA. *See Matt*, ¶¶ 12-15. Conspicuously absent from *Matt* is any direct or indirect reference to, much less application of, the distinct more specific instance of conduct test specified in § 46-11-410(2)(d), MCA. *See Matt*, ¶¶ 12-15.

¶46   In contrast, as analyzed *supra*, we decided *Hall* in pertinent part based on the distinct specific instance of conduct test specified in § 46-11-410(2)(d), MCA (formerly § 46-11-502(4), MCA). *Hall*, 224 Mont. at 190-92, 728 P.2d at 1341-42. Despite our procedural circumstance-specific co-application of the § 46-11-410(2)(d) test with the Fifth Amendment collateral estoppel protection *beyond* the *Blockburger* test,[9] we did not decide

---

[9] Despite its correct statutory analysis on the independent state law ground of § 46-11-410(2)(d), MCA (formerly § 46-11-502(4), MCA (1978), and § 95-1711(2)(d), RCM (1947) (1973)), *Hall* combined the more protective Montana statutory double jeopardy protection under § 46-11-410(2)(d), MCA, with the Fifth Amendment double jeopardy collateral estoppel principle discussed in *Brown* beyond the *Blockburger* same elements/offense test. *See Hall*, 224 Mont. at 190-93, 728 P.2d at 1340-42 (citing *Brown*, 432 U.S. at 166 n.6, 97 S. Ct. at 2226 (citing *Ashe* and

*Hall* based on application of the *Blockburger* same or included elements test then codified in §§ 46-11-502(1) and -501(2), MCA (now §§ 46-11-410(2)(a) and 46-1-202(9)(a), MCA). *Hall*, 224 Mont. at 190-92, 728 P.2d at 1340-42. Satisfaction of the *Blockburger*/§ 46-11-410(2)(a) test (*i.e.*, that each offense have an element of proof the other does not) was not at issue in *Hall*, obviously because the subject sub-variants of felony sexual assault and incest each had an element of proof the other did not—victim a person less than age 14 and offender three or more years older for felony sexual assault and victim a stepdaughter less than age 18 for incest. *See Hall*, 224 Mont. at 191-92, 728 P.2d at 1341-42. Rather, the pertinent focus of *Hall* was on the more specific instance of conduct test specified by § 46-11-410(2)(d), MCA, under which we essentially held that the subject offenses failed the more stringent § 46-11-410(2)(d) test because those *distinct elements* of each offense differed only in that one prohibited sexual contact with a victim of a more particular type/age-differential (incest) than prohibited by the other (felony sexual assault). *See Hall*, 224 Mont. at 191-92, 728 P.2d at 1341-42.

¶47    In *Sor-Lokken*, the analytical bookend to *Hall* in pertinent part, we again applied the specific instance of conduct test specified in § 46-11-410(2)(d), MCA (formerly § 46-11-502(4), MCA), but reached a different result based on a different sub-variant of sexual assault that, unlike the sub-variant at issue in *Hall*, required proof of lack of victim consent

---

*Nielsen*)). As later held by the Supreme Court, however, *Hall* was erroneous to the extent based on the Fifth Amendment. *See Montana v. Hall*, 481 U.S. 400, 402-05, 107 S. Ct. 1825, 1826-27 (1987) (per curiam – reversing *Hall* to extent based on asserted Fifth Amendment double jeopardy violation).

to the subject sexual contact. *Sor-Lokken*, 247 Mont. at 351-52, 805 P.2d at 1373. Upon close examination, *Hall*, in pertinent part, and *Sor-Lokken* were *both* correctly decided based solely on consideration of the more specific instance of conduct test specified in § 46-11-410(2)(d), MCA—not the *Blockburger* same or included elements test codified in §§ 46-11-410(2)(a) and 46-1-202(9)(a), MCA. Together, *Hall* and *Sor-Lokken* manifest the narrow focus and application of the more stringent specific instance of conduct test specified by § 46-11-410(2)(d), MCA, on and to the distinct elements of each offense, not common to the other, and whether those distinct elements, which caused the offenses to pass the less stringent *Blockburger*/"included offense" test, nonetheless caused the offenses to differ only in that the distinct elements of one merely required proof of a specific type of conduct, circumstance, or victim generally specified by the distinct element(s) of the other. Thus, neither *Hall* nor *Sor-Lokken* support the Court's assertion here that §§ 46-1-202(9) and 46-11-410(2)(a), MCA (*Blockburger* test) and § 46-11-410(2)(d), MCA (more specific instance of conduct test) impose a "single standard" of prohibited double jeopardy.

¶48    In *McQuiston*, the pertinent issues were whether concurrent convictions on the subject variants of the offenses of incest and sexual intercourse without consent (SIWC) violated: (1) the *Blockburger* same or included elements test; (2) § 46-11-410(2)(a), MCA (Montana-codified *Blockburger* test), as asserted by the defendant to provide greater protection than the *Blockburger* test; and/or (3) § 46-11-410(2)(d), MCA (more specific instance of conduct test). *McQuiston*, 277 Mont. at 404-07, 922 P.2d at 524-25. As a threshold matter, we rejected "McQuiston's interpretation" that § 46-11-410(2)(a), MCA, provides greater protection than the *Blockburger* test which it codifies. *See McQuiston*,

35

277 Mont. at 405-06, 922 P.2d at 525.  Turning to the statutory elements of the offenses, SIWC required proof of knowing sexual intercourse with "another person" and "without consent," while incest merely required proof of knowing sexual intercourse with "a descendant."  *McQuiston*, 277 Mont. at 405-06, 922 P.2d at 524-25.  *See also* § 45-5-503(1), MCA (1987); *compare* § 45-5-507(1), MCA (1987).  We thus held that the subject variant of incest (sexual intercourse with a descendant—mental state omitted) was not an "included offense" of SIWC (sexual intercourse with another without consent—mental state omitted) under the *Blockburger*/§ 46-11-410(2)(a) test because each "requires proof of distinct elements that the other does not."  *McQuiston*, 277 Mont. at 406-07, 922 P.2d at 525.  While we did not clearly explain the precise basis upon which the subject offenses passed each test, we similarly rejected the defendant's separate assertion that the subject variant of incest merely prohibited a "'specific instance' of the conduct proscribed by" SIWC for purposes of the separate double jeopardy protection provided by § 46-11-410(2)(d), MCA.  *McQuiston*, 277 Mont. at 406-07, 922 P.2d at 525.  However, contrary to the Court's assertion here, we did not expressly or implicitly hold that satisfaction of the *Blockburger* same or included elements test codified in §§ 46-11-410(2)(a) and 46-1-202(9), MCA, necessarily satisfied the more specific instance of conduct test specified by § 46-11-410(2)(d), MCA.  *See McQuiston*, 277 Mont. at 406-07, 922 P.2d at 525.  The reason the subject offenses distinctly satisfied the separate § 46-11-410(2)(d) test was not merely that they satisfied the *Blockburger*/§ 46-11-410(2)(a) test (requiring only that each have an element of proof the other did not), but that SIWC had *two* elements of proof not required by the subject variant of incest (*i.e.*, proof of "without

36

consent" *and* any person as the victim regardless of whether a descendent). *See* §§ 45-5-503(1) and -507(1), MCA (1987); *McQuiston*, 277 Mont. at 404-06, 922 P.2d at 524-25. Unlike the offenses at issue in *Hall*, the offenses in *McQuiston did not*, as referenced in § 46-11-410(2)(d), MCA (emphasis added), "differ *only* in that [incest] is defined to prohibit a specific instance of the conduct" generally prohibited by SIWC. *See* §§ 45-5-503(1) and -507(1), MCA (1987); *McQuiston*, 277 Mont. at 404-06, 922 P.2d at 524-25. Thus, *McQuiston* does not support the Court's assertion here that §§ 46-1-202(9) and 46-11-410(2)(a), MCA, and § 46-11-410(2)(d), MCA, impose a "single standard" of prohibited double jeopardy.

¶49 Unfortunately, the Court's erroneous conflation of § 46-11-410(2)(a) and (d), MCA, stems from a similar undiscerning conflation in *State v. Weatherell*, 2010 MT 37, 355 Mont. 230, 225 P.3d 1256. In *Weatherell*, the sole pertinent issue was whether concurrent convictions for partner/family member assault (PFMA), as defined by § 45-5-206(1)(a), MCA (purposeful/knowing causation of bodily injury to a partner/family member), and assault on a minor, as defined by § 45-5-212(1), MCA (purposeful/knowing causation of bodily injury to a statutorily-defined minor), violated § 46-11-410(2)(d), MCA (more specific instance of conduct test). *See Weatherell*, ¶¶ 11-13. Without analysis reconciling the distinct statutory language of § 46-11-410(2)(a) and (d), MCA, we broadly stated for the first time that *Matt*, *Hall*, *Sor-Lokken*, and *McQuiston* "employed a single standard"— the "included offense" test codified in § 46-1-202(9)(a), MCA (Montana-codified *Blockburger* test)—for determining whether concurrent convictions based on the same transaction violate both § 46-11-410(2)(a) and (d), MCA. *Weatherell*, ¶ 12. Because the

37

subject offenses each had an element of proof the other did not (*i.e.*, victim a statutorily-defined minor for assault on a minor and victim a partner/family member for PFMA), we held that the concurrent convictions did not violate the double jeopardy protection provided by "§ 46-11-410(2)(a), (d), MCA." *Weatherell*, ¶ 13.

¶50 As a preliminary matter, we correctly concluded in *Weatherell* that PFMA and assault on a minor passed the *Blockburger*/§ 46-11-410(2)(a) same or included elements test because each had an element of proof the other did not. We also correctly concluded that those offenses also passed the separate -410(2)(d) more specific instance of conduct test, not because they passed the *Blockburger* test as stated there, but because a statutorily-defined minor is not necessarily in every case a statutorily-defined partner/family member, or vice-versa. Thus, the elements distinct to each of those offenses differed by more than that one specified a more specific type of victim than the other as in *Hall*. However, like the Court's similar assertion here, our assertion in *Weatherell* that § 46-11-410(2)(a) and (d), MCA, impose a "single standard" of prohibited double jeopardy—the *Blockburger*/§ 46-1-202(9) "included offense" test—was clearly erroneous because it failed to reconcile the distinct disjunctive language of § 46-11-410(2)(a) and (d), MCA, and was based on cited underpinnings (*i.e.*, *Matt*, *McQuiston*, *Hall*, and *Sor-Lokken*) that on close examination do not support that proposition. Though ultimately correctly decided at the bottom-line, *Weatherell* should be clarified as to its erroneous preliminary statement of law, but, in any event, does not support the Court's assertion here that §§ 46-1-202(9) and 46-11-410(2)(a), MCA, and § 46-11-410(2)(d), MCA, impose a "single standard" of prohibited double jeopardy.

¶51    *Hooper* and *Brandt* are similarly problematic in pertinent part because they merely cite and perpetuate our erroneous statement in *Weatherell*. In *Hooper*, in the context of an asserted ineffective assistance of counsel claim, we considered whether concurrent convictions for aggravated burglary and elder abuse violated the double jeopardy protection of § 46-11-410(2)(d), MCA (more specific instance of conduct test). *Hooper*, ¶¶ 7-10. The distinct question of whether those convictions violated §§ 46-11-410(2)(a) and 46-1-202(9), MCA (Montana-codified *Blockburger* same or included elements test) was not at issue. *Hooper*, ¶¶ 7-10. Nonetheless, as in *Weatherell*, we erroneously introduced the *Blockburger*/"included offense" test into the distinct § 46-11-410(2)(d) more specific instance of conduct test analysis. *Hooper*, ¶ 11 (citing *Weatherell*, ¶ 12). Then, applying the *Blockburger*/"included offense" test to the elements of aggravated burglary (knowingly enter or remain unlawfully in an occupied structure, with purpose to commit an offense therein, and inflicting or attempting to inflict bodily injury on anyone in the course of effecting the entry, committing the offense, or immediate flight thereafter) and the subject variant of elder abuse (knowing infliction of mental/physical injury on person age 60 or older), we recognized that each offense had one or more elements of proof that the other did not and thus held "elder abuse is not a specific instance of aggravated burglary" for purposes of § 46-11-410(2)(d), MCA. *Hooper*, ¶¶ 12-16 (citing *Weatherell*, *Matt*, and *McQuiston*).

¶52    As in *Weatherell*, *Hooper* was ultimately correctly decided because aggravated burglary and the subject variant of elder abuse passed the *Blockburger*/"included elements" test codified in §§ 46-1-202(9)(a) and 46-11-410(2)(a) MCA, because each had one or

39

more elements of proof the other did not. They also satisfied the separate more specific instance of conduct test specified in § 46-11-410(2)(d), MCA, not because they satisfied the *Blockburger*/"included offense" test, but because, unlike in *Hall* where the distinct elements of each offense that satisfied the *Blockburger*/"included offense" test differed only as to the nature or type of victim, aggravated burglary had multiple distinct elements the elder abuse variant in *Hooper* did not, and its distinct elements differed from the distinct element of the elder abuse variant (elderly victim) by more than that elder abuse merely specified a more specific type of conduct, circumstance, or victim. Thus, other than our citation to and perpetuation of our prior erroneous statement in *Weatherell*, *Hooper* does not support the similarly erroneous proposition here that §§ 46-1-202(9)(a) and 46-11-410(2)(a), MCA, and § 46-11-410(2)(d), MCA, impose a "single standard" of prohibited double jeopardy.

¶53    In *Brandt*, again in the context of an asserted ineffective assistance of counsel claim, we considered whether concurrent convictions on five additional offenses based on the same underlying factual transaction violated the *Blockburger*/same or "included offense" test codified in §§ 46-1-202(9)(a) and 46-11-410(2)(a), MCA, and/or the more specific instance of conduct test specified in § 46-11-410(2)(d), MCA, either as included offenses, or mere prohibitions of more specific instances the conduct generally prohibited under the definition of common scheme fraudulent practices. *Brandt*, ¶¶ 9, 11-12, and 19-21. As pertinent, the essential elements of the subject offenses were:

(1)    common scheme fraudulent practices as defined by § 30-10-301(1), MCA—purposeful/knowing fraudulent or deceitful conduct (by embezzlement,

incomplete disclosure, nondisclosure, or material misstatement of fact), in connection with the offer or sale of a security, as part of common scheme;

(2)     common scheme elder exploitation as defined by § 52-3-825(3), MCA—purposeful/knowing use of deception or fraud, with intent to permanently deprive, a person age 60 or older, of his or her money, property, or assets, as part of a common scheme;

(3)     common scheme theft by embezzlement as defined by § 45-6-301(6) and (8), MCA—purposeful/knowing exertion of unauthorized physical control or control obtained by deception, with purpose to deprive, over property of the person's employer or entrusted to the person, as part of a common scheme;

(4)     failure to register as a securities salesperson as defined by § 30-10-201(1), MCA—willful transaction of securities business as a salesperson, by a person not registered to transact securities business as a salesperson, as part of a common scheme;

(5)     common scheme unregistered sale of a security as defined by § 30-10-202, MCA—willful offer or sale of an unregistered security, as part of a common scheme; and

(6)     common scheme operation of a Ponzi scheme as defined by §§ 30-10-324(7)(b) and -325, MCA—purposeful/knowing funneling of proceeds received from new investors to prior investors, under the guise of profit from the subject business venture, thereby cultivating the illusion of an opportunity for legitimate business profit, thereby inducing further investment, without sufficient assets to pay the promised returns, thereby guaranteeing the ultimate demise of the scheme, as part of a common scheme.

*Brandt*, ¶¶ 12 and 20-27.

¶54     As in *Hooper*, we began by citing our erroneous statement in *Weatherell* that the *Blockburger*/"included offense" test codified in §§ 46-1-202(9)(a) and 46-11-410(2)(a), MCA, is the same standard of double jeopardy applicable under both § 46-11-410(2)(a) and (d), MCA. *Brandt*, ¶ 18 (citing *Weatherell*, ¶ 12, and *Hooper*, ¶ 11). Upon application of the *Blockburger*/"included offense" test to the subject offenses, we then concluded that, except for theft by common scheme, none of the other five offenses violated either of the

41

double jeopardy protections provided by § 46-11-410(2)(a) and (d), MCA, in relation to common scheme fraudulent practices. *Brandt*, ¶¶ 18-28. As in *Weatherell* and *Hooper*, we correctly recognized that, except for common scheme theft by embezzlement, none of the other five offenses were included in common scheme deceptive practices for purposes of the *Blockburger*/"included offense" test because each had one or more elements of proof not included in deceptive practices and vice-versa. *See Brandt*, ¶¶ 20-28. Moreover, as in *Weatherell* and *Hooper*, we also ultimately correctly concluded, with one exception, that they also separately passed the more specific instance of conduct test under § 46-11-410(2)(d), MCA, not just because they passed the *Blockburger*/"included offense" test, but because, *unlike* in *Hall*, in each case at least one of the two offenses had multiple distinct elements the other did not, and the offenses differed by more than that the distinct element(s) of the other specified a more specific type of conduct, circumstance, or victim than specified by a distinct element of the former. *See Hooper*, ¶¶ 20-28. As with our similarly erroneous preliminary statements of law in *Weatherell* and *Hooper*, we should clarify our most recent erroneous preliminary statement of law in *Brandt*, but *Brandt* in any event does not support the similarly erroneous proposition here that §§ 46-1-202(9)(a) and 46-11-410(2)(a), MCA, and § 46-11-410(2)(d), MCA, impose a "single standard" of prohibited double jeopardy.

¶55 Here, based on the same single instance of sexual contact with the victim, and as clearly referenced in his post-trial judgment of conviction, Valenzuela was concurrently convicted of the particular sub-variant of incest requiring proof of knowing sexual contact with a descendant age 12 or younger and offender age 18 or older, and the particular

sub-variant of felony sexual assault requiring proof of knowing sexual contact with a victim less than age 14 and offender three or more years older. *See* § 45-5-507(1), (2)-(3), and (5), MCA (incest as charged and convicted here); *compare* § 45-5-502(1), (3), and (5)(a)(ii), MCA (felony sexual assault as charged and convicted here). As a matter of law, the only difference in statutorily-required proof between these particular sub-variants of incest and felony sexual assault is the nature of the relationship and age-differential between the victim and offender. As in *Hall* and unlike in *Sor-Lokken*, neither required the State to prove lack of victim consent—each merely required proof of a distinct relationship and age-differential between the victim and offender. As in *Hall* and unlike in *Sor-Lokken*, the statutorily-required relationship and age-differential between the victim and offender for the subject sub-variant of incest at issue here (descendant age 12 or younger and offender age 18 or older) is merely a more specific *element* of proof (*i.e.*, factual circumstance) than the statutorily-required relationship and age-differential between the victim and offender required for the subject sub-variant of sexual assault ("another person" less than age 14 and offender three or more years older). Consequently, regardless of satisfaction of the constitutional *Blockburger* same elements test, as codified in §§ 46-11-410(2)(a) and 46-1-202(9), MCA, Valenzuela's incest and sexual assault convictions violate the greater Montana statutory double jeopardy protection provided by § 46-11-410(2)(d), MCA, because, as in *Hall*, the distinct elements of those offenses that cause them to pass the same or included elements test under §§ 46-11-410(2)(a) and 46-1-202(9), MCA, as charged and convicted on in this case—victim less than age 16/offender three or more years older for sexual assault and descendant 12 or younger/offender 18 or

older for incest—nonetheless cause them to fail the separate test of § 46-11-410(2)(d), MCA, because the distinct elements of those offenses differ *only* in that incest more specifically pertains to sexual contact with a victim of a more specific type and age differential than sexual assault.[10]

¶56 In sum, here, the Court erroneously disregards § 46-11-410(2)(d), MCA, leading to a similarly erroneous mischaracterization and unnecessary overruling of our correct statutory analysis in *Hall*. Its analysis critically depends on our manifestly erroneous statement in *Weatherell*, as perpetuated in *Hooper* and *Brandt*, conflating the *Blockburger* same or included elements test codified in §§ 46-1-202(9)(a) and 46-11-410(2)(a), MCA, with the expressly different test specified in § 46-11-410(2)(d), MCA. I cannot be a party to, merely for the sake of "our precedent," further perpetuation of the erroneous mischaracterization of our undiscerning analysis of § 46-11-410(2)(a) and (d), MCA, in our pre-*Weatherell* cases, or our resulting erroneous statement of law in *Weatherell*, *Hooper*, and *Brandt*. Therefore, regardless of its unique procedural circumstance-specific co-application of § 46-11-410(2)(d), MCA (formerly § 46-11-502(4), MCA), with the Fifth Amendment collateral estoppel protection beyond the *Blockburger* test, I would reaffirm *Hall* as a correct interpretation and application of § 46-11-410(2)(d), MCA (formerly § 46-11-502(4), MCA), based on the particular sub-variants of incest and felony sexual assault at issue there. I would then reverse Valenzuela's sexual assault conviction based

_____

[10] Contrary to the Court's assertions here, this analysis of the statutory *elements* of the subject offenses is hardly "a factual approach . . . [as] specifically rejected in *Ritchson*."

44

on violation of § 46-11-410(2)(d), MCA, as applied to the particular sub-variants of incest and sexual assault distinctly at issue here.  I dissent.

/S/ DIRK M. SANDEFUR

Justice Ingrid Gustafson join in the dissenting Opinion of Justice Sandefur.

/S/ INGRID GUSTAFSON